IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MARION MISIAK and | ) | |
| MARY BETH MISIAK | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07 C 6330 |
| | ) | |
| MORRIS MATERIAL HANDLING, INC., | ) | Honorable Judge John W. Darrah |
| a foreign corporation, d/b/a P&H Cranes, | ) | |
| P&H CRANES, individually and as | ) | |
| a division of Morris Material Handling, | ) | |
| Inc., WHITING CORPORATION, a | ) | |
| Foreign corporation, HUBBELL | ) | |
| INCORPORATED, a foreign corporation | ) | |
| d/b/a Gleason Reel Corp., and | ) | |
| GLEASON REEL CORP., a foreign | ) | |
| Corporation, a/k/a GRC International, | ) | |
| individually and as a division of | ) | |
| Hubbell Incorporated, | ) | |
| | ) | |
| Defendants. | | |

## **MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY**

NOW COMES, UNION TANK CAR COMPANY ("Union Tank"), by and through its attorneys, Timothy V. Hoffman and Paige C. Donaldson, and moves this honorable Court to enter an Order Disqualifying Johnson & Bell, Ltd. ("Johnson & Bell") as counsel for MORRIS MATERIAL HANDLING, INC. D/B/A P&H CRANES and P&H CRANES ("Morris Material"), and in support of its Motion, states as follows:

### FACTS

*Johnson & Bell's Present Representation of Morris Material*

The instant case arises out of a product liability and negligence action brought by the Plaintiffs, Marion and Mary Beth Misiak, against Defendants, Morris Material Handling, Inc.

d/b/a P&H Cranes and P & H Cranes ("Morris Material"), represented by Johnson & Bell, Whiting Corporation ("Whiting"), Hubbell Incorporated ("Hubbell") and Gleason Reel Corp. ("Gleason") in connection with personal injuries sustained by Plaintiff Marion Misiak while working as an employee of Union Tank at a Union Tank facility located in East Chicago, Indiana. (Exhibit A at ¶¶ 1-7, 11, and 13). Specifically, on November 7, 2006, Marion Misiak, was working near a crane carrying a metal jacket when a cable on the overhead crane broke, causing the metal jacket to fall and strike him. (Exhibit A at ¶¶ 12-16). As a result, Marion Misiak suffered catastrophic injuries. (Exhibit A at ¶¶ 28-29). Plaintiffs allege that the injuries were caused, in part, by various negligent acts of Morris Material, including but not limited to, its negligent inspection, maintenance and repair of the crane, its failure to install limit switches that would have prevented the crane from being improperly raised, and because it allegedly bypassed the limit switch. (Exhibit A at ¶¶ 27). Plaintiffs' Complaint also includes claims for strict products liability and negligence against Whiting, in connection with its manufacture of the crane at issue, and against Hubbell and Gleason in connection with their design and manufacture of a component part of the crane at issue. (Exhibit A, Counts III – IV, VI-VII).

Plaintiffs' exclusive remedy against his employer, Union Tank, was limited to workers' compensation. Ind. Code § 23-3-2-6; *Spangler, Jennings & Dougherty P.C. v. Indiana Insurance Co.*, 729 N.E.2d 117, 120 (Ind. 2000). Notwithstanding, Union Tank's potential liability for Plaintiff's accident is at direct issue in this case because Morris Material raised Union Tank's fault as an affirmative defense and named Union Tank as a nonparty pursuant to Indiana's Comparative Fault Act. Ind. Code § 34-51-2-14. (Exhibit B, Second Affirmative Defense at ¶¶ 1-5). Morris Material claims that Union Tank was negligent in that it: 1) failed to adequately train Marion Misiak, including training concerning the unsafe act of being under a

2

load carried by an overhead crane; 2) failed to train the crane operator with regard to the unsafe act of carrying a load over an individual; 3) failed to implement a safety program that prevented a load suspended from a crane being carried over an individual; 4) wired, or re-wired the trolley and/or hoist of the crane that impacted the effectiveness of the upper limit switch; and 5) failed to adequately train the operator of the crane regarding two blocking and to train the operator to watch the height of the cranes hook lock.

These claims call into question Union Tank's safety policies and procedures. Moreover, Union Tank's safety policies and procedures are at direct issue in this matter as the parties identified, among other things, how the accident occurred, the work done on the crane by Union Tank or other entities, and Union Tank's training of the crane operator and Plaintiff and other Union Tank employees regarding the use of cranes, as issues necessitating discovery in their joint report from their planning conference. (Exhibit C at ¶ 4(C)).

*Johnson & Bell's Prior Representation of Union Tank*

From approximately the mid 1970s until 2006, Johnson & Bell was retained by Union Tank as its primary counsel in all of its legal affairs. (See Exhibit D). Johnson & Bell represented Union Tank's interests in approximately 320 matters over the course of this approximately thirty year relationship. The subject matter and geographic span of these matters is immense, but by way of example, Johnson & Bell represented Union Tank in actions involving products liability, premises liability, toxic tort litigation, chemical spills and releases, and numerous other claims alleging negligence on behalf of Union Tank. Johnson & Bell was retained as primary counsel for Union Tank in matters involving the same facility that is at issue in this case and in all out of state matters as well. (See Exhibit D). With respect to the out of

state matters, Johnson & Bell acted as primary counsel and worked in conjunction with local counsel defending Union Tank. (See Exhibit D).

Johnson & Bell was involved in each step of the litigation process for all claims against Union Tank, irrespective of whether said matters resulted in suit being filed, including but not limited to investigation, devising legal strategies for defending claims, appearing in court on Union Tank's behalf, drafting motions and memoranda, performing legal research, responding to subpoenas and records requests, settlement negotiations, as well as trying several cases, including a class action in Bogalusa, Louisiana, for which Johnson & Bell received over $4.6 million in legal fees alone. The Bogalusa matter was handled by Johnson & Bell well into 2006 and, in fact, Johnson & Bell continues to submit invoices for legal services performed in connection with its representation of Union Tank in this and other matters. Further, Johnson & Bell remains in possession of all of Union Tank's files that it acquired during the course of its representation of Union Tank. (See Exhibit D).

Just as in the present case, many, if not all, of these matters involved personal injuries claimed to be caused by Union Tank equipment and/or personnel. Union Tank's safety policies and procedures and standards regarding the maintenance and repair of equipment, as well as training of its personnel, are also at the center of the present case. (Exhibit B, Second Affirmative Defense at ¶¶ 1-5, Exhibit C at ¶4(C)). Accordingly, Johnson & Bell must be disqualified from representing Morris Material in this matter due to the conflict of interest between it and Union Tank arising out of its prior representation of Union Tank in substantially related matters.

*Standing*

Only a party who has been a client of the attorney whose conduct is in question may challenge the attorney's representation of another in a subsequent matter. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 173, 685 N.E.2d 871, 875 (Ill. 1997). Although Union Tank is not an opposing party, it is a former client of Johnson & Bell, it has a significant interest in the outcome of the instant case, and its interests are adverse to those of Morris Material. First, as stated *supra*, Morris Material raised Union Tank's potential fault in this matter as an affirmative defense and named Union Tank as a nonparty pursuant to Indiana's Comparative Fault Act, alleging that Union Tank's negligence caused or contributed to Plaintiff Marion Misiak's injuries. (Exhibit B at ¶¶ 1-5). Under Indiana's Comparative Fault Act, where a nonparty defense is asserted, fault is apportioned between the plaintiff, defendant and any properly named nonparty. Ind. Code § 34-51-2-14. The jury verdict forms require a disclosure of the percentage of fault charged against any party and nonparty. Ind. Code § 34-51-2-7. Accordingly, Union Tank's alleged fault is at direct issue in this matter and Union Tank's interests are in direct opposition to those of Morris Material.

Next, Union Tank has a significant interest in the instant litigation as its workers' compensation lien will be directly affected by the outcome thereof. Indiana's Workers' Compensation Act permits an injured employee who has collected workers' compensation benefits to bring an action against a third party who contributed to the employee's injuries and to keep whichever is worth more. Ind. Code § 22-3-2-13; *Spangler*, 729 N.E.2d at 120. An employer who paid benefits to an employee seeking recovery from a third party is entitled to a lien on any recovery the employee may obtain from a third party responsible for his injuries. *Id*. However, pursuant to Indiana's Comparative Fault Act, Union Tank's workers' compensation

lien will be diminished in the same proportion as Plaintiff Marion Misiak's total recovery is reduced, which would include a reduction for any fault apportioned to Union Tank as a nonparty. Ind. Code § 34-4-33-12; *Weidenaar v. Indiana Insurance Co.*, 874 F.Supp. 235, 237 (N.D.Ind. 1995). Section 34-51-2-19 of Indiana's Code also provides that the lien will be further reduced by Union Tank's pro rata share of the Plaintiffs' attorneys fees and litigation expenses accrued in connection with obtaining a judgment or settlement in this suit. Ind. Code § 34-51-2-19; *Spangler,* 729 N.E.2d at 122. Union Tank's interests are materially adverse to those of Morris Material and will be directly affected by the outcome of this case. Union Tank and Morris Material, for all intents and purposes, are opposing parties in this case.

## ARGUMENT

**JOHNSON & BELL SHOULD BE DISQUALIFIED FROM REPRESENTING MORRIS MATERIAL DUE TO THE CONFLICT OF INTEREST BETWEEN IT AND UNION TANK.**

Johnson & Bell should be disqualified from representing Morris Material in this case because this representation constitutes a violation of Rule 1.9 of the Illinois Rules of Professional Conduct and Northern District of Illinois Local Rule 83.51.9(a), which prohibit a lawyer who has formerly represented a client in a matter from "representing another in the same or a substantially related matter in which that person's interests are materially adverse to those of a former client, unless the former client consents after disclosure." Ill. Sup. Ct. R. of Professional Conduct, 1.9; N.D. Ill. LR 83.51.9(a). Union Tank did not consent to Johnson & Bell's representation of Morris Material, has never agreed to waive any privileged communication with Johnson & Bell, and will not do so.

In order to disqualify a law firm who undertakes litigation against a former client, the former client must prove: 1) the prior attorney-client relationship involved in the prior

6

representation; and 2) that the matters involved in the prior representation and the present representation of the opposing party are substantially related. *Hasco, Inc. v. Roche*, 299 Ill.App.3d 118, 127 700 N.E.2d 768, 774 (1st Dist. 1998). "Substantially related" means if a lawyer could have obtained confidential information in the former representation that is relevant to the present representation. *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983). Prior and current representations can be substantially related where they do not deal with precisely the same issues. *Id.* at 1268-69; *LaSalle National Bank v. County of Lake*, 708 F.2d 252, 256 (7th Cir. 1983). Where a substantial relationship is found, the moving party need not prove that the attorney in question actually received confidential information relevant to matters involved in the instant litigation during the course of prior representation. *Id.* The existence of a substantial relationship gives rise to a presumption of shared confidences. *Id.* at 257. This presumption can be rebutted in the case of an attorney switching from one firm to a new firm that later represents an adversary of the old firm if effective screening measures are taken. *Id.* However, in this case, where the firm itself changes sides, the presumption of shared confidences is irrebuttable. *Analytica,* at 1267-68. "A law firm is not permitted to switch sides if its former representation was substantially related to its new representation, no matter what screens it sets up." *Id*. at 1268.

A three level inquiry is used to determine whether a substantial relationship exists: 1) the trial judge must make a factual reconstruction of the scope of the prior legal representation; 2) it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters; and 3) it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client. *LaSalle National Bank v. County of Lake*, 703 F.2d 252, 255 (7th Cir.

1983) (*citing Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir. 1978)). Applying this test to this case, it is undeniable that the scope of Johnson & Bell's previous representation of Union Tank was vast and that Johnson & Bell received confidential information relevant to the present case.

### *Scope of Prior Representation*

Part one of the three-level inquiry is easily satisfied in this case. Johnson & Bell was retained by Union Tank as primary counsel in approximately 320 matters over approximately thirty years beginning in approximately the mid 1970s and continuing through August of 2006. (See Exhibit D). Johnson & Bell continues to submit invoices to The Marmon Group for legal services performed in connection with its representation of Union Tank. Additionally, all of Union Tank's files acquired by Johnson & Bell throughout the scope of its prior representation of Union Tank remain in Johnson & Bell's possession. The sheer volume of matters in which Johnson & Bell was retained to protect Union Tank's interests, in addition to a substantial amount of fees collected by Johnson & Bell therein, demonstrates that a prior relationship between Union Tank and Johnson & Bell exists.

### *Johnson & Bell Received Confidential Information throughout the Course of its Previous Representation of Union Tank*

The second prong asks whether it is reasonable to infer that the confidential information alleged would have been given to an attorney in such matters. *LaSalle National Bank*, 703 F.2d at 255. In *LaSalle National Bank*, an attorney and his law firm were disqualified from representing plaintiffs in an action involving a sewage agreement against a county based on the attorney's prior employment in the same county's State's Attorneys' office. 703 F.2d at 259. The lawsuit alleged that the county had arbitrarily refused sewer access to property owned by the

8

plaintiffs and that the underlying sewage disposal agreement between the defendants was unlawful. *Id*. at 254. The county moved to disqualify the attorney and his firm because throughout the course of the attorney's prior work for the county, which had ceased approximately six months before the case at issue was brought, he was privy to discussions regarding the validity of such sewage agreements. *Id*. The Court found that it was "reasonable to infer that confidential information regarding the county's legal analysis and strategies relating to the validity of the various sewage agreements would have been given to an attorney who was the chief of the civil division of the State's Attorneys' office during that time." *Id*. Similarly, in *Safe-T-Products v. Learning Resources, Inc*., the court disqualified an attorney from representing the plaintiff in an intellectual property declaratory action. 2002 WL 31386473 *1, *4 (N.D.Ill. 2002). The court disqualified the attorney in that case after finding that it was "reasonable to infer that confidential information about the Defendant's business and legal strategies would have been given to an attorney who worked on several intellectual property matters over several years." *Id*.

Likewise, in this case, it is reasonable to infer that Johnson & Bell received confidential information throughout the course of its prior representation of Union Tank in approximately 320 matters. As primary counsel for Union Tank in all matters, Johnson & Bell was involved in all aspects of the litigation process. The depth and breadth of Johnson & Bell's representation of Union Tank would have resulted in Johnson & Bell being privy to confidential information pertaining to Union Tank's litigation strategies, safety policy and procedures, its standards for maintenance and repair of equipment, general business policies and strategies, as well as to Union Tank's decision making processes with respect to settlement of claims. It is reasonable to infer that a law firm retained to represent a company in all its legal affairs, including but not

limited to products liability claims, premises liability, chemical spills and releases, and other various negligence claims, received confidential information of this nature.

### *The Confidential Information Received during Johnson & Bell's prior representation of Union Tank is Relevant to its Present Representation of Morris Material*

The final inquiry in determining whether a substantial relationship exists asks whether the confidential information received by the firm during the previous representation is relevant to the present representation. *LaSalle National Bank*, 703 F.2d at 255. Prior and current representations need not involve the same facts or even the same causes of action to be substantially related. *Analytica Inc.*, 708 F.2d at 1268-69; *LaSalle National Bank,* 708 F.2d at 256. In *Analytica*, the law firm representing the plaintiff in an antitrust suit was disqualified from the matter because the same firm had previously represented the defendant in a stock transfer proceeding. 708 F.2d at 1269. The law firm's previous and present representations were substantially related because the firm received confidential information pertaining to the defendant's profitability, sales prospects, and general market strength when it represented the defendant in a prior stock transfer case. *Id*. at 1267. The Court found these aspects of the defendant's business were relevant to the antitrust suit at issue in which the same firm opposed its former client. *Id*. Thus, although the facts and causes of actions varied, the court found a substantial relationship because the firm had received confidential information during the course of its prior representation of the defendant, in only a single case, regarding issues that were common to both. *Id*.

Similarly, in *LaSalle National Bank*, the court found that the confidential information received by the attorney who previously acted as "primary legal advisor" to the former client, through his participation in discussion and strategic thinking about other sewage agreements

negotiated and executed by the county over the years, was relevant to the case at issue involving a sewage agreement. 703 F.2d at 255. In *Safe-T-Products*, the Court found that confidential information presumably received during the attorney's work for the former client-turned adversary was relevant to the trademark case at issue because both representations involved intellectual property matters. 2002 WL 31386473 at*4.

      The confidential information that Johnson & Bell received during its prior representation of Union Tank is relevant to the instant case. The majority of the matters in which Johnson & Bell represented Union Tank addressed issues regarding Union Tank's safety policies and procedures and standards with respect to the maintenance, inspection and repair of its equipment. (See Exhibit D). Union Tank's safety policies and procedures are also at direct issue in this case. As stated *supra*, Morris Material claimed that Union Tank was at fault and that it caused or contributed to Marion Misiak's injuries by its failure to adequately train Marion Misiak and the crane operator; in its failure to implement a safety program to prevent a load suspended from a crane being carried over an individual; and that its wiring or re-wiring of the trolley and/or hoist affected the limit switch that allegedly failed. Moreover, the parties identified work done on the crane by Union Tank and the training of the crane operator and other Union Tank employees regarding the use of cranes as subjects necessitating discovery. (Exhibit C at ¶ 4(C)). Based on Morris Material's allegations against Union Tank, as well as the scope of discovery anticipated by the parties, it is clear that Union Tank's safety policies and procedures, as well its standards regarding maintenance and repair of its equipment, are at direct issue in this case.

      Information regarding Union Tank's safety policies and procedures was precisely the sort of information that was received by Johnson & Bell during its previous representation of Union Tank. Just as was demonstrated in *Analytica*, *LaSalle National Bank*, and *Safe-T-Products*, the

fact that Johnson & Bell did not represent Union Tank in a case involving this crane, or any crane for that matter, does not preclude a finding of a substantial relationship. Johnson & Bell received confidential information relevant to the case at bar throughout the course of representing Union Tank in substantially related matters.

## CONCLUSION

A conflict of interest between Johnson & Bell and Union Tank, arising out of its prior representation of Union Tank in substantially related matters over the course of approximately thirty years, exists in this case. Johnson and Bell received a significant amount of confidential information relevant to the case at bar throughout the course of the prior representation and therefore must be disqualified. Johnson & Bell's continued representation of Morris Material is untenable.

WHEREFORE, UNION TANK CAR COMPANY prays this Honorable Court to enter an Order disqualifying Johnson & Bell as counsel for MORRIS MATERIAL HANDLING, INC. D/B/A P&H CRANES and P&H CRANES in this matter, and for any other relief it deems just and proper.

Respectfully Submitted,

By:   /s/ Timothy V. Hoffman
Timothy V. Hoffman
Attorney for Union Tank Car Company

Timothy V. Hoffman (ARDC 6186716)
Paige C. Donaldson
Sanchez Daniels & Hoffman LLP
333 West Wacker Drive, Suite 500
Chicago, IL  60606
(312) 641-1555