6799-08001                                    TJA/JBC/JSS/nr

IN THE UNITED STATED DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MARION MISIAK and MARY BETH MISIAK,<br>　　　　Plaintiffs,<br><br>vs.<br><br>MORRIS MATERIAL HANDLING, INC.,<br>a Foreign Corporation d/b/a P&H CRANES,<br>P&H CRANES, Individually and as a Division<br>of MORRIS MATERIAL HANDLING, INC.,<br>WHITING CORPORATION, a Foreign<br>Corporation, HUBBELL INCORPORATED, a<br>Foreign Corporation d/b/a GLEASON REEL<br>CORP., and GLEASON REEL CORP., a Foreign<br>Corporation a/k/a GRC INTERNATIONAL,<br>Individually and as a Division of HUBBELL<br>INCORPORATED,<br>　　　　Defendants. | NO:   07 C 6330<br><br>Judge Darrah<br><br>Magistrate Judge Nolan |

## ANSWERS TO PLAINTIFF'S INTERROGATORIES

Defendant, MORRIS MATERIAL HANDLING, INC., by and through its attorneys, JOHNSON & BELL, LTD., for its Answers to Plaintiff's Interrogatories, states as follows:

　　1.　　State the name of the defendant answering, and the full name, address, and title of the individual signing the answer.

**ANSWER:**

　　Dave Barrett, General Manager
　　S40 W24160 Rockwood Way
　　Waukesha, WI 53189


　　2.　　Were you named or cover under any policy of liability insurance effective on the date of the occurrence and, if so, state the name of each such company, the policy number, the effective period, and the maximum liability limits for each person and each occurrence.

1



ANSWER:

Yes, Liberty Mutual Insurance Company
Policy No: TB1-641-004434-016
Effective Dates: 06/01/2006 – 06/01/2007
Policy Limited: $5,000,000 per occurrence and aggregate.
Defendant has excess insurance above this policy.


3.  Do you have statements from any witness? If so, give the name and address of each such witness, the date of each such statement, and state whether such statement was written or oral.

ANSWER:

Defendant has no statements of witnesses to the occurrence.


4.  List the names and addresses of all persons, from the period of November 7, 2006 to the present, who have knowledge of: (a) the facts and circumstances surrounding said occurrence; (b) the condition of the subject crane and/or components parts; (c) the nature of any worked performed by Morris Material Handling/P&H Cranes on the subject crane and/or component parts; (d) the addition and/or removal of any mechanical limit switch; (f) the wiring of the electronic limit switch; and (g) any safety modifications or recommendations made by Morris Material Handling/P&H Cranes.

ANSWER:

See Defendants Rule 26(a)(1) disclosure.


5.  Were any photographs, movies, videotapes, diagrams, or drawings taken or prepared regarding the subject crane, the repair, maintenance, or work performed on the subject crane, the scene of the incident, or the person and/or components involved? If so, state the date or dates they were taken or prepared, the subject thereof, who now has custody of them, and the name, address, occupation, and employer of the person taking them.

ANSWER:

All photographs were produced in the 26(a)(1) disclosure or received by Defendant from Plaintiff.


6.  Has Morris Material Handling and/or P&H Cranes inspected, serviced, maintained, repaired, or tested the subject crane and/or component parts at any time? If so,

2

please state: (a) all persons or entities who inspected, serviced, maintained, repaired or tested the subject crane and/or component parts; (b) the dates on which the subject crane and/or component parts were inspected, serviced, maintained, repaired or tested; (c) the nature of the testing, repairs, maintenance, service and inspection of the subject crane and/or component parts; and whether any reports, documents, or records were generated in connection with each such testing, repairs, maintenance, service, and inspection (if yes, please produce all reports, documents, and records).

**ANSWER:**

Yes. Crane was inspected on July 11, 2006, by Defendant's employee, Mike Hoover, during an annual inspection and his report was produced as part of Defendant's 26(a)(1) disclosure.

In July of 2006, the end trucks were inspected and it was determined that they needed replacement. Defendant has not been able to determine who was involved at that time.

From November 3, 2007 to November 5, 2007, Defendant was involved in replacement of end trucks on the subject crane, and on November 6, 2007 and November 7, 2007 Defendant replaced bridge gear boxes. The individuals doing that work, or parts of it, were:

Mike Thompson
Chris Schultz
Jason Warnecke
Ted Balltes
Larry Grening
Melvin Houzenga
Ted Liglit
Aaron Flores
Andy Waedekin

The job files for the work done November 3, 2007 – November 7, 2007 were previously produced pursuant to Rule 26(a)(1).

On November 10, 2006, Douglas Sumner and Aaron Flores were involved in a post-accident inspection, and looked at the subject crane, and hook block involved, and there was a test whether geared limit switch was open or closed. A report by Douglas Sumner was prepared in anticipation of litigation and provided to Morris Material Handling's Legal Department. Privilege is claimed as to that report. Also, present were David Lawrence and Glenn Steppula (sp?) of Union Tank Car, and an unknown consultant for Union Tank Car.

On November 17, 2006 Douglas Sumner and Aaron Flores were involved in a post-accident inspection and testing of the hoist operation, tested whether the geared limit switch was open or closed, opened the cover of the geared limit switch and observed the position of the actuation cams and wiring. Also observed was lifting of a jacket by another crane, performed by

Union Tank Car employees. A report was prepared at the request of Morris Material Handling's legal counsel, and privilege is claimed as to that report. Present at the inspection were Tim Hoffman of Sanchez, Daniels & Hoffman, John Costa of Union Tank Car and consultant for Sanchez, Daniels & Hoffman.

An inspection was preformed on August 27, 2007 by Plaintiff's consultant, Fredrick Heath, with three technicians from Expert crane in Ohio. Stephan Blandin represented Plaintiff. Tim Hoffman was present representing Union Tank Car and had a consultant, Scott Leopold. John Costa, Union Tank Car employee was also present. Items inspected by Plaintiff's consultant included visual inspection of the geared limit switch, visual inspection of the brake, and visual inspection of the contracts, relays and wiring in the control cabinet. It is believed that field requirements were taken by Plaintiff's consultant. Curt Waedekin prepared a report at the request of Morris Material Handling's legal counsel and privilege is claimed as to that report.

7. Has Morris Material Handling/P&H Cranes ever contracted with Union Tank Car/UTLX for the maintenance, service, repair, inspection, and/or testing of the subject crane? If yes, please list the nature of each contract entered into and the effective dates thereof.

**ANSWER:**

Yes, see proposals and Purchase Orders produced by Defendant in its Rule 26(a)(1) Disclosure.

8. List the names and addresses of all present or former agents, employees, and/or servants of Morris Material Handling/P&H Cranes who performed any maintenance, repairs, inspections, testing, or service on the subject crane and/or component parts in the period five (5) years prior to the date of the occurrence to the present.

**ANSWER:**

See Answers to Nos. 4 and 6 above.

9. Please state whether any modifications were recommended and/or incorporated into the subject crane to prevent persons from becoming injured by the subject crane as a result of "two-blocking" at Union Tank Car/UTLX or on the subject crane. If yes, describe each recommendation and/or modification, the date each recommendation and/or modification was made.

4

**ANSWER:**

Upon information and belief, the crane has never been repaired or used since the occurrence, and Morris Material Handling has made no recommendations regarding modifications to the subject crane.

10. Identify any and all changes or modifications to the subject crane and/or component parts performed by or recommended by Morris Material Handling, Inc. and/or P&H Cranes, including but not limited to: any warnings, limit switches, and/or failsafe mechanisms. If yes, state the following: (a) the date(s) of the changes or modifications; (b) the person or entities that designed the changes or modifications; (c) the persons or entities that performed the changes or modifications; and (d) the changes or modifications that were made.

**ANSWER:**

See, Crane Deficiency Report produced in Defendant's 26(a)(1) Disclosure for repair and replacement of parts. Morris Material Handling also recommended replacement of end trucks, and bridge gear boxes. All such recommendations involved replacement or repair and did not involve modifications.

11. State whether Morris Material Handling, Inc./P&H Cranes ever observed Union Tank Car/UTLX, including its agents, employees and/or servants, performing "two-blocking" practices on the subject crane. If so state when the said practice was observed, and the names of the individuals taking part in said practice of "two-blocking".

**ANSWER:**

Morris Material Handling did not observe any "two-blocking" incidents at Union Tank Car.

12. State whether Morris Material Handling, Inc./P&H Cranes ever observed Union Tank Car/UTLX, including its employees, agents and/or servants, to stop or discontinue the practice of "two-blocking". If so state the date on which Morris Material Handling/P&H Cranes so advised, whether such advice was given orally or in writing, and the names of the individuals that were advised to stop or discontinue said practice.

**ANSWER:**

Morris Material Handling is not familiar with any practice of Union Tank Car to intentionally "two-block" any crane.

13. Have there been any tests or repairs to the subject crane and/or component parts subsequent to the date of the occurrence? If so, state the following: (a) the date(s) of the testing or repairs; (b) the persons or entities that designed testing or repairs; (c) the persons or entities that performed the testing or repairs; and (d) list the tests or repairs that were performed.

**ANSWER:**

See Answer to Interrogatory No. 6.

14. Please state if you provided Union Tank Car/ULTX, its employees, and/or users of the subject crane any instructions and/or procedures regarding the set up, assembly, or use of the subject crane and/or component parts. If so, state to whom these instructions were provided, give a description of the instructions given, and, if written, please produce said instructions.

**ANSWER:**

Morris Material Handling did not provide instructions to Union Tank Car.

15. State whether you took any action designed to warn Union Tank Car/UTLX, its employees, or users of the subject crane against possible safety hazards related to the subject crane and/or component parts prior to the occurrence. If yes, please state: (a) the specific safety hazard that was the subject of the warning; (b) the nature of the action you took; (c) a description or quotation of each warning given; and (d) whether said warning was oral or in writing (if in writing, please produce said warning).

**ANSWER:**

See, Deficiency Report produced in Defendant's Rule 26(a)(1) Disclosure. Also, it is believed that Morris Material Handling, in July or August of 2006, advised Union Tank Car of unsafe conditions of the end trucks on the subject crane. At least one end truck had structural damage before replacement by Morris Material Handling.

16. Has Morris Material Handling, Inc./P&H Cranes, including its employees, servants, and/or agents, at any time performed or advised Union Tank Car/UTLX to install a mechanical limit switch on the subject crane? If yes, please state the action Morris Material Handling/P&H Cranes took, the date of such action, and the names and addresses of any person taking such action.

**ANSWER:**

No.

6

17. Identify any and all known persons or entities (other than yourself) whom held contracts for the service, maintenance or repair of the subject crane in the five (5) years prior to the date of the occurrence? For each, please state their name, address and telephone numbers, the nature of the contract, the date any such contract became effective, and the date any such contract terminated.

**ANSWER:**

Unknown, other than Morris Material Handling, and all contracts of Morris Material Handling with Union Tank Car for the subject crane were produced as part of the 26(a)(1) Disclosure.

18. Have any other lawsuits or claims have been filed against you alleging personal injury as a result of a failure to maintain, repair, and/or properly service a crane. If so, state the name of each plaintiff or claimant, the date of said accident or injury, the court in which the action was brought, the caption and case number of the action, the name and address of each plaintiff's attorney, and state, in general, the nature of said injury or accident.

**ANSWER:**

Morris Material Handling, Inc. objects to this Interrogatory as being overly broad, without limitation as to time and scope, type of crane, type of incident, or type of maintenance service or repair. Counsel for Morris Material Handling, Inc. remains ready to have a Local Rule 37.2 Conference regarding this request.

7

## VERIFICATION

DAVID R BARRETT being first duly sworn on oath, deposes and states that he has read the foregoing Answers to Interrogatories, knows the contents thereof, and states that said Answers are true and correct to the best of his knowledge and belief.

*David R Barrett*

Subscribed and Sworn to Before me this 11th day of April, 2008.

*Rosemarie Phelps*
NOTARY PUBLIC

Respectfully submitted,

JOHNSON & BELL, LTD.

One of the Attorneys for Defendant,
Morris Material Handling, Inc.

Thomas J. Andrews, Esq.
Joseph B. Carini, Esq.
Joshua S. Singewald, Esq.
JOHNSON & BELL, LTD.
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603
(312) 372-0770
#1807690

9